MOORE, J., delivered the opinion of the court, in which MERRITT, J. joined. ROGERS, J. (pp. 246-54), delivered a separate dissenting opinion.
OPINION
KAREN NELSON MOORE, Circuit Judge.
In this bankruptcy case, Appellants Jackson Truck & Trailer Repair, Inc., James A. Harrell, Raleigh J. Williams, and Mark Lazarus (collectively “the JT & T parties”) appeal the district court’s order granting Appellee Hyundai Translead, Inc. (“Hyundai”) derivative standing to bring an action on behalf of the bankruptcy estate to recover certain assets that Hyundai alleges were fraudulently transferred from the debtor Trailer Source, Inc., to the JT & T parties. We granted permission for an interlocutory appeal on the question of whether a creditor may be granted derivative standing to bring an action pursuant to 11 U.S.C. §§ 544(b) and 550(a) on behalf of the bankruptcy estate for avoidance of fraudulent or preferential transfers in light of the Supreme Court’s decision in Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A., 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). The JT & T parties also appeal the district court’s order granting Hyundai relief from the automatic stay so that it may proceed in a separate district-court action asserting fraudulent-transfer claims against the JT & T parties to recover the assets allegedly transferred from Trailer Source. The district court reversed contrary orders by the bankruptcy court. Hyundai argues that the JT & T parties lack prudential appellate standing to pursue this appeal. For the reasons explained below, we conclude that the JT & T parties have appellate standing to pursue this appeal; we AFFIRM the district court’s ruling granting Hyundai derivative standing; and we RE *233 VERSE the district court’s grant of stay relief to Hyundai.
I. BACKGROUND[1]
Hyundai is a manufacturer of semi-truck trailers. In 2000, Hyundai sold a large quantity of trailers to Southern Trailer & Equipment Sales, Inc. (“Southern Trailer”), a trailer dealership in which appellants James A. Harrell (“Harrell”) and Raleigh Williams (“Williams”) owned a majority interest. Harrell and Williams also owned a majority interest in two other dealerships: appellant Jackson Truck & Trailer Repair, Inc. (“Jackson Truck & Trailer”), and the debtor in this case, Trailer Source, Inc. (“Trailer Source”).[2]
In 2002, Hyundai filed a civil action in California state court against the JT & T parties, Southern Trailer, and Trailer Source. Hyundai alleged that it had delivered more than $44 million in trailers to Southern Trailer but had received only $26 million in payment. Hyundai alleged that there were fraudulent conveyances of trailers from Southern Trailer to the two other dealerships that otherwise could have satisfied Southern Trailer’s debt to Hyundai. In August 2002, Hyundai entered into a settlement and security agreement (“California Settlement”) with all of the defendants in the California action. Under the terms of that agreement, Trailer Source and Southern Trailer agreed to a schedule for payment of the remaining $18 million debt to Hyundai, and Hyundai obtained a security interest in the assets of both. Trailer Source and Southern Trailer.
In October 2003, Trailer Source defaulted on its obligations under the California Settlement. On June 30, 2004, Hyundai filed suit in the United States District Court for the Middle District of Tennessee alleging that the JT & T parties had established a scheme to transfer fraudulently trailers and cash from Trailer Source and Southern Trailer to Jackson Truck & Trailer, preventing the first two dealerships from making their scheduled payments to Hyundai pursuant to the California Settlement.
On January 6, 2005, Hyundai filed an involuntary Chapter 7 bankruptcy petition against Trailer Source, and on February 14, 2005, the United States Bankruptcy Court for the Middle District of Tennessee entered an order of relief, which automatically stayed the proceedings in Hyundai’s separate action in the United States District Court for the Middle District of Tennessee against the JT & T parties. A number of parties, including Hyundai and the JT & T parties, subsequently filed as creditors of Trailer Source.
Soon after appointment of a trustee, Hyundai contacted the trustee to request an investigation of the fraudulent-transfer claims and consideration of an action by the trustee against the JT & T parties. At first, the trustee proposed that he employ Hyundai’s own counsel at Hyundai’s expense to conduct an investigation, but the trustee withdrew this suggestion after the JT & T parties argued that Hyundai had a conflict of interest. On November 8, 2005, the trustee also offered to sell the cause of action to Hyundai, but Hyundai declined because of concerns about the legality of such a transaction. Hyundai then made a demand upon the trustee to pursue an *234 avoidance action against the JT & T parties. Under 11 U.S.C. §§ 544(b) and 550(a), a bankruptcy trustee may seek to avoid certain transfers of a debtor’s assets and to recover assets that were wrongfully transferred. After the trustee declined to pursue an avoidance action, Hyundai filed a motion asking the bankruptcy court to grant Hyundai derivative standing to pursue the avoidance action on behalf of the bankruptcy estate.
That motion was opposed by the JT & T parties, and the bankruptcy court held a hearing on February 7, 2006. At that hearing, the trustee explained that he did not pursue the fraudulent-transfer claims primarily because the estate lacked funds to pay the investigation and litigation costs and he “could not retain competent counsel in a case like this to go forward on a contingency fee basis. It’s not going to happen.” Joint Appendix (“J.A.”) at 441 (Hr’g Tr. 2/7/06 at 31). The trustee also explained that “the merits of the case was part of it” and “[t]he economics was part of it,” and further cited the “weird situation with the district court.” J.A. at 57 (Dist. Ct. Op. at 4). On February 21, 2006, the bankruptcy court denied Hyundai’s motion for derivative standing. J.A. at 39 — 41 (Order on Mot. for Derivative Standing). The bankruptcy court concluded that Hyundai had not made the requisite showing that the fraudulent-transfer claims were “color-able” so as to establish derivative standing under Canadian Pacific Forest Products, Ltd. v. J.D. Irving, Ltd. (In re The Gibson Group, Inc.), 66 F.3d 1436 (6th Cir.1995). The bankruptcy court also concluded that the trustee’s refusal to pursue the claims was based on the trustee’s business judgment that “an outside law firm would not likely take the case on a contingency basis due to its merits.” J.A. at 40 (Order on Mot. for Derivative Standing at 2). Finally, the court expressed reservations about the viability of the derivative-standing doctrine in light of the Supreme Court’s decision in Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A., 530 U.S. 1, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). After it was denied derivative standing, Hyundai filed a timely proof of claim in the amount of $19,441,768. J.A. at 184 (Proof of Claim).
On February 17, 2006, four days before the bankruptcy court’s ruling on derivative standing, Hyundai filed a motion for relief from the automatic stay so that it could pursue its separate district-court action against the JT & T parties. Later that day, the trustee filed a motion for approval of a settlement of the estate’s fraudulent-transfer claims against the JT & T parties. Under that agreement (“Bankruptcy Settlement”), the JT & T parties agreed to pay $50,000 to settle all of the fraudulent-transfer claims. On March 3, 2006, Hyundai filed a motion for reconsideration of the order denying it derivative standing. After a hearing on March 28, 2006, the bankruptcy court approved the Bankruptcy Settlement and denied Hyundai’s motion for reconsideration.
Following a hearing on May 2, 2006, the bankruptcy court also denied Hyundai’s motion for relief from the stay. Hyundai had argued that it had security interests in certain collateral that could not be settled by the trustee in the Bankruptcy Settlement. However, the bankruptcy court ruled that Hyundai’s motion was moot because all of Hyundai’s claims were encompassed within the Bankruptcy Settlement. Further, the court ruled that Hyundai had failed to show that relief was appropriate pursuant to 11 U.S.C. § 362(d)(1) or (2).
On June 6, 2006, Hyundai appealed the following orders of the bankruptcy court to the district court: (1) the order approving the Bankruptcy Settlement, (2) the order denying Hyundai derivative standing, (3) *235 the order denying Hyundai’s motion to reconsider that denial, and (4) the order denying Hyundai’s motion for relief from the automatic stay. The district court reversed all of the orders except the order denying reconsideration. First, the district court found that the bankruptcy court abused its discretion in approving the Bankruptcy Settlement because it did not set forth adequate findings in support of its order and because the record contained facts weighing against the settlement, including the fact that the estate received only $50,000 in exchange for the release of nearly $20 million in fraudulent-transfer claims. Second, the district court ruled that the Supreme Court’s decision in Hartford Underwriters did not affect the continuing validity of derivative standing, and that Hyundai satisfied the test for derivative standing under Gibson Group. Third, because it reversed the bankruptcy court’s denial of derivative standing, the district court affirmed, without reaching the merits, the bankruptcy court’s order denying Hyundai’s motion for reconsideration. Finally, the district court reversed the bankruptcy court’s order denying Hyundai’s motion to lift the automatic stay. The district court explained that the trustee did not have authority to settle Hyundai’s security interests in the debtor, which exist irrespective of the avoidance action Hyundai sought to assert on behalf of the estate. The district court thus concluded that the bankruptcy court erred in finding that Hyundai’s interests were settled by the Bankruptcy Settlement. Further, the district court concluded that Hyundai was entitled to a lift of the automatic stay under 11 U.S.C. § 362(d) because the estate contained little if any value, and therefore Hyundai’s interests were not adequately protected.
After the district court’s decision, the JT & T parties filed a motion asking the district court to certify the following questions for interlocutory appeal: (1) whether derivative standing remains available in Chapter 7 proceedings after Hartford Underwriters, (2) whether the res judicata effect of the California Settlement barred Hyundai from exercising derivative standing, and (3) whether the district court should have affirmed the Bankruptcy Settlement given the res judicata effect of the California Settlement. The district court certified the first question pursuant to 28 U.S.C. § 1292(b), noting that this court has not yet addressed the continuing viability of derivative standing since Hartford Underwriters. On July 24, 2007, we granted permission for an interlocutory appeal on that question. In this consolidated appeal, the JT & T parties also appeal the district court’s order reversing the bankruptcy court’s denial of Hyundai’s motion to lift the automatic stay.
II. ANALYSIS
A. Appellate Standing
Hyundai contends that the JT & T parties lack appellate standing to appeal either the district court’s order granting Hyundai’s request for derivative standing or its order granting Hyundai’s motion to lift the automatic stay. Specifically, Hyundai argues that the JT & T parties lack standing under the prudential doctrine of “appellate standing” that applies only in the bankruptcy context. Under that doctrine, which is “more limited than Article III standing or the prudential requirements associated therewith,” standing to appeal a bankruptcy order is limited to “person[s] aggrieved” by that order, that is, parties “directly and adversely affected pecuniarily.” Harker v. Troutman (In re Troutman Enters., Inc.), 286 F.3d 359, 364 (6th Cir.2002) (internal quotation marks omitted). However, as we explain below, the doctrine of appellate standing is not *236 applicable under the circumstances of this case.
We are aware of no case that applies the appellate-standing doctrine when it is undisputed that the party who initially challenged the bankruptcy court’s order— here Hyundai — had appellate standing to do so. The appellate-standing doctrine has been applied almost exclusively in cases in which the question is whether the party who appealed the bankruptcy court’s order was sufficiently aggrieved by that order. See, e.g., In re Troutman Enters., 286 F.3d at 364-65 (holding that shareholders of debtor corporation lacked appellate standing to appeal bankruptcy court’s order awarding insurance proceeds to trustee); Marlow v. Rollins Cotton Co. (In re The Julien Co.), 146 F.3d 420, 423 (6th Cir.1998) (holding that creditor lacked appellate standing to appeal order of bankruptcy court absent permission of bankruptcy court); see also Squire v. Scher (In re Squire), 282 Fed.Appx. 413 (6th Cir.2008) (unpublished opinion); Lyndon Prop. Ins. Co. v. Katz, 196 Fed.Appx. 383 (6th Cir.2006) (unpublished opinion); Manus v. Lambros (In re Monus), 63 Fed.Appx. 215 (6th Cir.2003) (unpublished order); Fishell v. Soltow (In re Fishell), No. 94-1109, 1995 WL 66622 (6th Cir. Feb.16, 1995) (unpublished opinion), cert. denied, 516 U.S. 862, 116 S.Ct. 173, 133 L.Ed.2d 114 (1995).
We are aware of only one case in this circuit in which the appellate-standing doctrine was applied in a different context. In Fidelity Bank, National Association v. M.M. Group, Inc., 77 F.3d 880, 882 (6th Cir.1996), we applied the doctrine to the question of whether the appellants had standing to appeal a district court’s order in a federal receivership action. The appellants in Fidelity Bank were an affiliate of a debtor company and a principal' and shareholder of that affiliate; along with the debtor, they had been sued by a creditor for fraudulent conveyances in an action consolidated with a receivership action in district court. Id. at 881. Over the objections of the affiliate and its principal, the receiver entered into an agreement with the creditor in which the creditor abandoned its fraudulent-conveyance claim against the debtor, and in exchange the debtor assigned its rights to pursue its own fraudulent-transfer claim against the affiliate. Id. After the district court ruled that the receiver had the authority to abandon the receivership’s claim, the affiliate and its principal appealed. Id. at 881-82. On appeal, we applied the appellate-standing doctrine and held that the affiliate and its principal lacked appellate standing because they did not assert claims against the receivership estate’s assets and therefore were “not adversaries in the context of the receiver’s motion to abandon the fraudulent conveyance claim.” Id. at 883. Concluding that the bankruptcy appellate-standing doctrine applied in the receivership context, we noted that “a primary purpose of both receivership and bankruptcy proceedings is to promote the efficient and orderly administration of estates for the benefit of creditors.” Id. at 882.
In the bankruptcy context, however, we have never applied this doctrine when the party that initiated the appeal from the bankruptcy court had undisputed appellate standing. The doctrine has been exclusively invoked to limit which parties may initiate appeals from the bankruptcy court to the district court or the Bankruptcy Appellate Panel.[3] Only in the narrow con *237 text of a receivership action — in which the district court takes on a role that resembles a bankruptcy court — has this court ever invoked the doctrine to ask whether the party appealing from the district court to the court of appeals was sufficiently aggrieved.
We find support for limiting the appellate-standing doctrine to initial appeals from the bankruptcy court in the rationales that courts have articulated for the doctrine. For instance, the First Circuit has explained that:
This rule of appellate standing is necessary to insure that bankruptcy proceedings are not unreasonably delayed by protracted litigation that does not serve the interests of either the bankrupt’s estate or its creditors. The nature of bankruptcy litigation, with its myriad of parties, directly and indirectly involved or affected by each order and decision of the bankruptcy court, mandates that the right of appellate review be limited to those persons whose interests are directly affected.
In re El San Juan Hotel, 809 F.2d 151, 154 (1st Cir.1987). Thus, a principal rationale of the appellate-standing doctrine is to prevent parties indirectly affected by bankruptcy-court rulings from bringing appeals on tangential issues.
However, once a party with undisputed standing has appealed a bankruptcy court’s order in district court, and that issue has been litigated in the district court, these concerns are no longer implicated to the same degree. First, the district court may hear an initial appeal only from a sufficiently “aggrieved party” whose interests are directly implicated in the bankruptcy proceedings. Aligned on the other side in the district court are adverse parties who, though they may not independently meet the requirements of appellate standing, have a concrete stake in the outcome at least sufficient to establish an Article III “case” or “controversy.” When the same parties and issues remain in the case on a second layer of appeal (from the district court to the court of appeals), the case logically still involves parties sufficiently aggrieved so as to satisfy the prudential doctrine’s demand that the appeal must involve directly affected parties. Moreover, applying this prudential doctrine to bar appeals by only certain parties from the district court to the court of appeals would create a perverse imbalance. Here, for instance, if Hyundai had lost in the district court, it is clear that it would have appellate standing to pursue a second appeal to the court of appeals. However, if the appellate-standing doctrine were applied in this context, the JT & T parties — parties adverse to Hyundai in the district court — might lack standing to appeal the district court’s adverse rulings on the very same issues.
In sum, we hold that the bankruptcy appellate-standing doctrine is not applicable to the second layer of appeal, from the district court to the court of appeals, when it is uncontested that the party who appealed the bankruptcy court’s order to the district court had appellate standing.[4] Instead we apply the general rule that “a *238 party must be aggrieved by the judicial action from which it appeals.” City of Cleveland v. Ohio, 508 F.3d 827, 836 (6th Cir.2007) (internal quotation marks omitted). Because it is uncontested that the JT & T parties are aggrieved by the decision of the district court, the JT & T parties have standing to pursue this appeal.
B. Availability of Derivative Standing
The district court concluded that the Bankruptcy Code permits grants of derivative standing to creditors to pursue avoidance claims on behalf of the bankruptcy estate. Hyundai seeks derivative standing to assert avoidance claims against the JT & T parties pursuant to two statutory provisions that authorize an estate to recover assets wrongfully transferred from the debtor. Section 544(b)(1) provides that:
Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under 502(e) of this title.
11 U.S.C. § 544(b)(1) (emphasis added). Section 550(a) then provides that:
Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from- — •
(1) the initital transferee of such transfer or the entity for whose benefit such transfer was made; or
(2) any immediate or mediate transferee of such initial transferee.
11 U.S.C. § 550(a) (emphasis added).[5] The JT & T parties contend that the plain language of §§ 544(b) and 550(a) authorizes only the trustee to act and thus precludes derivative standing by the creditor to proceed on behalf of the estate. They argue that derivative standing under these provisions is foreclosed by the decision in Hartford Underwriters where the Supreme Court determined that identical “the trustee may” language in § 506(c) of the Bankruptcy Code foreclosed any party other than the trustee from using that provision to recover certain administrative costs. The JT & T parties further submit that the rationale for allowing derivative standing in Chapter 11 proceedings, which this court has permitted post-Code but pr e-Hartford Underwriters in Gibson Group, does not extend to Chapter 7 proceedings where there is always an independent bankruptcy trustee.
We review the decision of the bankruptcy court directly, giving no deference to the decision of the district court. Heavrin v. Schilling (In re Triple S Restaurants, Inc.), 519 F.3d 575, 578 (6th Cir.2008). We review the bankruptcy court’s legal conclusions de novo and its factual findings for clear error. Id.
In Hartford Underwriters, the Supreme Court held that § 506(c) of the Bankruptcy Code was exclusively enforceable by the bankruptcy trustee. That section provides as follows:
The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and ex *239 penses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim....
11 U.S.C. § 506(c) (emphasis added). Hartford Underwriters, an insurance company that had provided workers’ compensation insurance to the Chapter 7 debtor, sought to recover unpaid premiums. Because the estate lacked sufficient unencumbered funds to pay the premiums, Hartford sought to charge the premiums to a secured creditor pursuant to § 506(c), which allows for the charge of certain administrative expenses against lienholders. Hartford argued that § 506(c) gave it authority to bring an independent action to recover the premiums. See Hartford Underwriters, 530 U.S. at 3-5, 120 S.Ct. 1942. The Supreme Court disagreed, holding that the plain language of § 506(c) indicated that the trustee was the only party authorized to invoke the provision. Id. at 6, 120 S.Ct. 1942. The Court noted that “[w]here a statute ... names the parties granted [the] right to invoke its provisions ... such parties only may act.” Id. at 6-7, 120 S.Ct. 1942 (internal quotation marks omitted) (second alteration in original). Next, the Court cited the unique role played by the trustee in bankruptcy proceedings, “mak[ing] it entirely plausible that Congress would provide a power to him and not to others.” Id. at 7, 120 S.Ct. 1942. Because it concluded that the text of the Code was clear, the Court rejected Hartford’s reliance upon pre-Code practice in which non-trustees were sometimes permitted to directly pursue administrative expenses. Id. at 9-11, 120 S.Ct. 1942. Finally, the Court observed that if non-trustees were permitted independently to pursue recovery they might “impair the ability of the bankruptcy court to coordinate proceedings,” and might “proceed even where the trustee himself planned to do so.” Id. at 13, 120 S.Ct. 1942.
The Court carefully noted, however, that it did “not address whether a bankruptcy court can allow other interested parties to act in the trustee’s stead in pursuing recovery under § 506(c).” Id. at 13 n. 5, 120 S.Ct. 1942. Noting the “practice of some courts of allowing creditors ... a derivative right to bring avoidance actions when the trustee refuses to do so, even though the applicable Code provisions mention only the trustee,” the Court explained that this practice “ha[d] no analogous application here, since [Hartford] did not ask the trustee to pursue payment ... and did not seek permission from the Bankruptcy Court to take such action in the trustee’s stead.” Id. (internal citations omitted). Thus, the Court made clear that it was rejecting only an “independent right to use § 506(c).” Id. Accordingly, although Hartford Underwriters provides guidance for our analysis, it does not control the question of whether the Bankruptcy Code allows courts to grant derivative standing to creditors to bring avoidance actions when the trustee refuses to do so.
We first note that since Hartford Underwriters every court of appeals to address derivative standing to pursue avoidance claims has affirmed the practice’s validity. Two courts have expressly considered the impact of Hartford Underwriters and have upheld the practice. See PW Enters., Inc. v. N.D. Racing Cornm’n (In re Racing Servs., Inc.), 540 F.3d 892, 898 & n. 7 (8th Cir.2008) (holding that “derivative standing is available to a creditor to pursue avoidance actions when it shows that a Chapter 7 trustee (or debtor-in-possession in the case of Chapter 11) is ‘unable or unwilling’ to do so” notwithstanding Hartford Underwriters); Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel. Cybergenics Corp. v. Chinery, 330 F.3d 548, 580 (3d Cir.2003) (en banc) (holding that “bankruptcy courts *240 can authorize creditors’ committees [in Chapter 11 proceedings] to sue derivatively to avoid fraudulent transfers for the benefit of the estate” notwithstanding Hartford Underwriters). Two other circuits have continued to approve of the practice post-Hartford Underwriters, though without mention of the Hartford Underwriters decision. Glinka v. Murad (In re Housecraft Indus. USA, Inc.), 310 F.3d 64, 70-72 (2d Cir.2002); Commodore Int’l Ltd. v. Gould (In re Commodore Int’l Ltd.), 262 F.3d 96, 99-100 (2d Cir.2001); Fogel v. Zell, 221 F.3d 955, 965-66 (7th Cir.2000) (approving of derivative standing in dicta).
We begin, as did the Supreme Court in Hartford Underwriters, with the observation that “Congress ‘says in a statute what it means and means in a statute what it says there.’” 530 U.S. at 6, 120 S.Ct. 1942 (quoting Connecticut Nat’l Bank v. Germain, 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992)). Sections 544(b) and 550(a) — and other avoidance provisions — make no reference to derivative standing and state only that “the trustee may” bring certain avoidance and recovery actions. If these were the only relevant sections of the Code, Hartford Underwriter’s interpretation of “the trustee may” in § 506(c) would weigh strongly against derivative standing given the “natural presumption that identical words used in different parts of the same act are intended to have the same meaning.” Atl. Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 433, 52 S.Ct. 607, 76 L.Ed. 1204 (1932). However, our analysis is not so cribbed, because other provisions of the Bankruptcy Code, as well as pre-Code practice, clearly contemplate the equitable power of bankruptcy courts to authorize creditors, in appropriate instances, to bring claims on behalf of the bankruptcy estate.
First, in 11 U.S.C. § 503(b)(3)(B) Congress has expressly provided that creditors may be compensated on a priority basis for their efforts in recovering property for the benefit of the estate. Specifically, § 503(b)(3)(B) provides for the priority payment of the expenses of “a creditor that recovers, after the court’s approval, for the benefit of the estate any property transferred or concealed by the debtor.” 11 U.S.C. § 503(b)(3)(B). An avoidance action pursuant to § 544(b) — as Hyundai proposes here — falls within the scope of § 503(b)(3)(B) as an action to recover “property transferred ... by the debtor.” Based upon the text and statutory history of § 503(b)(3)(B), we believe that the only explanation for this provision is that it approves the practice of permitting creditors, with court authorization, to pursue claims on behalf of bankrupt debtors. See Cybergenics, 330 F.3d at 563-66.
We find support for this reading in the statutory history of § 503(b)(3)(B). Section 503(b)(3)(B) is derived from § 64a(1) of the Bankruptcy Act. As early as 1900, derivative standing for creditors had been judicially recognized. See Chatfield v. O’Dwyer, 101 F. 797, 800 (8th Cir.1900).[6] In 1903, Congress amended the Bankruptcy Act of 1898 to add § 64a, which provided for the priority payment of a creditor’s expenses when transferred assets were “recovered for the benefit of the estate ... by the efforts” of the creditor. Act of Feb. 5, 1903, ch. 487, sec. 14, 32 Stat. 797, 800 (codified as amended at 11 U.S.C. § 104(a)(1)) (repealed 1978). “The ostensible purpose of the amendment was presumably to make explicit what had already *241 been determined to be implicit: that creditors acting for the benefit of the estate were allowed to sue derivatively.” Alan R. Lepene & Sean A. Gordon, The Case for Derivative Standing in Chapter 11: “It’s the Plain Meaning, Stupid,” 11 Am. Bankr.Inst. L.Rev. 313, 319 (2003). When Congress enacted the Bankruptcy Code in 1978, it continued the practice of § 64a(l) in what is now § 503(b)(3)(B) of the Bankruptcy Code. See H.R.Rep. No. 95-595, at 355 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6311 (explaining that the proposed § 503(b) of the new Bankruptcy Code “is derived mainly from section 64(a)(1) of the Bankruptcy Act, with some changes”); see also COM-1 Info, Inc. v. Wolkowitz (In re Maximus Computers, Inc.), 278 B.R. 189, 197 (9th Cir. BAP 2002) (“Section 503(b)(3)(B) carries forward the long-settled authority under former Bankruptcy Act § 64a(1) for creditors to sue in the name of the trustee to recover property for the benefit of the estate and to be compensated as administrative expenses”). We believe that the well-established practice of derivative standing, unlike the practice at issue in Hartford Underwriters, is “ ‘the type of “rule” that ... Congress was aware of when enacting the Code.’ ” Hartford Underwriters, 530 U.S. at 10, 120 S.Ct. 1942 (quoting United States v. Ron Pair Enters., Inc., 489 U.S. 235, 246, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)).
We further believe that § 503(b)(3)(B) would be meaningless if the Code did not also contemplate the practice of derivative standing. Although the JT & T parties make little attempt to address the significance of § 503(b)(3)(B), we note that parties in other cases have offered alternative interpretations of § 503(b)(3)(B) in an attempt to show that this provision would not be meaningless absent the practice of derivative standing. One alternative interpretation posits a creditor who, after ob-taming a lift of the automatic stay from the bankruptcy court, independently pursues a state-law fraudulent-conveyance claim and surrenders any surplus recovery to the estate. However, as the Third Circuit observed in Cybergenics, this interpretation fails because state fraudulent-conveyance law provides that “a transfer or obligation may be avoided only ‘to the extent necessary to satisfy the creditor’s claim.’ ” 330 F.3d at 565 (quoting 7A Uniform Laws Annotated, Uniform Fraudulent Transfer Act § 8; 7A Uniform Laws Annotated, Uniform Fraudulent Conveyance Act § 9). “Because an oversecured creditor cannot directly recover any property beyond that necessary to satisfy its own claim, it cannot recover property for the benefit of the estate unless it sues derivatively.” Id.
A second alternative interprets § 503(b)(3)(B) as authorizing expenses for creditors “who object to discharge and then successfully locate and bring into the estate assets that had been transferred or concealed by the debtor.” Cybergenics, 330 F.3d at 584 (Fuentes, J., dissenting). Some courts have accepted this interpretation and allowed creditors to recoup expenses when the creditors’ efforts in discovering hidden assets and opposing discharge ultimately benefit the estate. See id. (listing cases). The theory behind this interpretation is that, although the creditor does not technically “recover” property, the trustee would not have recovered the property but for the creditors’ assistance in locating the assets. See, e.g., In re Harvey, No. 04-35576PM, 2006 WL 4481990, at *2 (Bankr.D.Md. Nov.22, 2006) (“While technically the creditors did not recover property for the benefit of the Debtor, they were the cause without which no recovery would have taken place.”); In re Spencer, 35 B.R. 280, 281 (Bankr.N.D.Ga.1983) (finding that creditor’s actions in locating *242 assets and opposing discharge qualified for recoupment of expenses under § 503(b)(3)(B)). This reading, however, is inconsistent with the plain language of § 503(b)(3)(B), which provides that it is the “creditor” who must “recover.” When the creditor merely provides investigative assistance or otherwise helps the trustee locate assets, it is the trustee who ultimately recovers rather than the creditor. See Cybergenics, 330 F.3d at 565 (“[I]nvestigative assistance would not implicate § 503(b)(3)(B) because the [creditors’] committee would not itself recover the property.”); In re Beale, 358 B.R. 744, 745-47 (Bankr.N.D.Ill.2006) (holding that creditor that conducted investigations and assisted trustee in recovering assets for estate could not recoup expenses under § 503(b)(3)(B) because it was the trustee who “recovered”); In re Blount, 276 B.R. 753, 763 (Bankr.M.D.La.2002) (“[Section 503(b)(3)(B)] is limited to situations wherein the creditor is ‘a creditor that recovers.’ [T]he connection must be direct. The creditor must be the recovering party; extension to situations where the creditor’s action indirectly or ultimately leads to the recovery of property is contrary to the statute.”). Consequently, we reject this alternative interpretation as inconsistent with § 503(b)(3)(B)’s clear requirement that the creditor must be the recovering party.
Because we reject these alternative interpretations, we agree with the Third Circuit that § 503(b)(3)(B) “would be meaningless unless authority [to sue derivatively] existed.” Cybergenics, 330 F.3d at 567. We do not believe, however, that § 503(b)(3)(B) authorizes derivative standing in the first instance. Instead, like the Third Circuit, we believe this authority derives from “bankruptcy courts’ equitable power to craft flexible remedies in situations where the Code’s causes of action fail to achieve their intended purpose.” Id.
The Supreme Court has long recognized that bankruptcy courts are courts of equity with the power to apply flexible equitable remedies in bankruptcy proceedings. See Young v. United States, 535 U.S. 43, 50, 122 S.Ct. 1036, 152 L.Ed.2d 79 (2002) (“[B]ankruptcy courts ... are courts of equity and ‘appl[y] the principles and rules of equity jurisprudence.’ ”) (quoting Pepper v. Litton, 308 U.S. 295, 304, 60 S.Ct. 238, 84 L.Ed. 281 (1939) (second alteration in original)); United States v. Energy Resources Co., 495 U.S. 545, 549, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990) (“[Bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships.”); Local Loan Co. v. Hunt, 292 U.S. 234, 240, 54 S.Ct. 695, 78 L.Ed. 1230 (1934) (“[C]ourts of bankruptcy are essentially courts of equity, and their proceedings inherently proceedings in equity.”); see also H.R.Rep. No. 95-595, at 359 (1977), as reprinted in 1978 U.S.C.C.A.N. 5963, 6315 (stating that under the new Bankruptcy Code “[t]he bankruptcy court will remain a court of equity”).
We agree with the Third Circuit that “the ability to confer derivative standing ... is a straightforward application of bankruptcy courts’ equitable powers.” Cybergenics, 330 F.3d at 568. In § 544(b), Congress clearly intended for bankruptcy estates to recover assets fraudulently transferred by the debtor. To effectuate this intent, Congress authorized the trustee (or debtor-in-possession) to bring avoidance actions to maximize the value of the estate. Typically, the system designed by Congress ensures that the value of the estate is maximized and that creditors’ rights are protected because the trustee will pursue valuable avoidance claims. However, when the trustee unjustifiably refuses to bring an avoidance *243 action under § 544(b), the system “breaks down.” “It is in precisely this situation that bankruptcy courts’ equitable powers are most valuable, for the courts are able to craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain.” Cybergenics, 330 F.3d at 568. When the trustee is delinquent, the bankruptcy court — or the district court of which it is a unit[7] — should be able to exercise its equitable powers to authorize a creditor to pursue recovery of fraudulently transferred property for the benefit of the estate. In so doing, this equitable remedy effectuates Congress’s intent that fraudulently transferred property be recovered for the bankruptcy estate.
The JT & T parties argue in the alternative that even if derivative standing is available in Chapter 11 proceedings, it should not be available in Chapter 7 proceedings such as the instant case. The JT & T parties acknowledge that derivative standing may be necessary in Chapter 11 proceedings where typically there is not an independent trustee and thus it is the debtor (“debtor-in-possession”) who generally decides whether to bring an avoidance action. We noted in Gibson Group that “[a] debtor-in-possession often acts under the influence of conflicts of interest and may be tempted to use its discretion ... as a sword to favor certain creditors over others, rather than as a tool to further its reorganization for the benefit of all creditors as Congress intended.” Canadian Pacific Forest Products, Ltd. v. J.D. Irving, Ltd. (In re The Gibson Group, Inc.), 66 F.3d 1436, 1441 (6th Cir.1995). The JT & T parties submit that derivative standing is not necessary in the Chapter 7 context because Chapter 7 proceedings always have an independent trustee who is not subject to such conflicts of interest.
We reject this attempt to limit derivative standing to Chapter 11 proceedings. First, there is circuit precedent allowing derivative standing in Chapter 7 proceedings, albeit in a pre-Bankruptcy Code case. William B. Tanner Co. v. United States (In re Automated Bus. Sys., Inc.), 642 F.2d 200 (6th Cir.1981). In Automated Business Systems, a pre-Bankruptcy Reform Act of 1978 case, we held that a creditor had derivative standing to pursue an avoidance action when the trustee in Chapter 7 liquidation proceedings refused to bring an action because of a lack of funds in the estate. Id. at 201-02. We noted there that the need for derivative standing could be particularly great in the context of Chapter 7 proceedings where there may be “no funds remaining] to divide among creditors or to finance a suit to set aside a fraudulent conveyance.” Id. at 202.
Second, there is no textual support in the Code for drawing such a distinction between the Chapter 7 and Chapter 11 contexts. Section 503(b)(3)(B), which provides textual support for the availability of derivative standing, applies in both Chapter 7 and Chapter 11 proceedings. We do not believe that this was a mere oversight, given that Congress expressly limited another subsection of § 503(b)(3) to Chapters 9 and 11. See § 503(b)(3)(D) (providing that creditors and other enumerated parties may recoup costs incurred “in making a substantial contribution in a case under chapter 9 or 11 of this title”).
There are also substantial policy reasons for allowing derivative standing in Chapter *244 7 proceedings. As we noted in Automated Business Systems, in contrast to Chapter 11 reorganization proceedings, in Chapter 7 liquidation proceedings there are often “no funds remain[ing] to divide among creditors or to finance a suit to set aside a fraudulent conveyance.” 642 F.2d at 202. Consequently, a trustee in Chapter 7 proceedings may decline to pursue meritorious and potentially sizeable claims simply because there are inadequate funds in the estate to pay litigation expenses. Indeed, that appears to be the case here. The trustee explained that he “didn’t have any money in the case” and that “economics” was part of reason that he did not pursue the avoidance claims urged by Hyundai. J.A. at 441 (Hr’g Tr. 2/7/06 at 31); J.A. at 57 (Dist. Ct. Op. at 4). Although the trustee stated that he “could not retain competent counsel in a case like this to go forward on a contingency fee basis,” the record does not indicate whether the trustee actually attempted to find contingency counsel or simply concluded on his own that it would be futile. J.A. at 441 (Hr’g Tr. 2/7/06 at 31). In any case, we do not believe that the trustee’s failure to obtain contingency counsel suggests that the avoidance claims were weak or insubstantial. We note, for instance, that the JT & T parties offered to settle the claims for $50,000, and that Hyundai has made a substantial investment in pursuing these claims in the present case and in the district court action. Instead, the record indicates that the trustee declined to pursue apparently colorable — and potentially size-able — claims in large part because of a lack of available funds to finance an investigation and possible litigation. Just as conflicts of interest may lead to underen-forcement of avoidance claims by debtors-in-possession in Chapter 11 proceedings, a lack of available funds may lead to under-enforcement by trustees in Chapter 7 proceedings. In this situation, we believe that bankruptcy courts should be able to authorize derivative standing for creditors willing and able to prosecute colorable claims that may enhance the value of the bankruptcy estate in Chapter 7 proceedings.
Finally, we pause to emphasize additional ways that the practice of derivative standing that we approved in Gibson Group and now reaffirm is distinguishable from the practice addressed by the Supreme Court in Hartford Underwriters. There, the Court expressly limited its holding to a creditor’s assertion of an independent right to proceed under the Code (specifically under § 506(c)). 530 U.S. at 13 n. 5, 120 S.Ct. 1942. Unlike the petitioner in Hartford Underwriters, Hyundai does not assert an independent right, but instead must seek and obtain permission from the bankruptcy court (or the district court of which it is a unit) before it may proceed on behalf of the estate. Because derivative standing is not asserted as an independent right and must be authorized by the bankruptcy court, it does not present the same risk of interference with the trustee and the bankruptcy court feared by the Supreme Court in Hartford Underwriters. The Hartford Underwriters Court expressed concern that allowing parties to proceed independently under § 506(c) without court permission could “impair the ability of the bankruptcy court to coordinate proceedings, as well as the ability of the trustee to manage the estate” and that parties “could proceed even where the trustee himself planned to do so.” Id. at 13, 120 S.Ct. 1942. Further, the Court feared that parties “might attempt to use § 506(c) even though their claim ... was quite weak.” Id. However, these concerns are greatly alleviated by the procedural prerequisites to derivative standing. In Gibson Group, we held that a party moving for derivative standing *245 must show that: (1) a demand was made on the trustee (or debtor-in-possession) to act, (2) the trustee (or debtor-in-possession) declined, (3) a colorable claim exists that would benefit the estate, and (4) the trustee’s (or debtor-in-possession’s) inaction was an abuse of discretion. 66 F.3d at 1446. In sharp contrast to the practice disapproved of in Hartford Underwriters, a creditor may not proceed when the trustee plans to do so, a creditor may not bring a weak or non-colorable claim, and, because derivative standing must be judicially approved, the bankruptcy court’s ability to coordinate proceedings is not impaired.
In conclusion, we reaffirm the continued vitality after Hartford Underwriters of granting derivative standing to creditors to pursue avoidance actions on behalf of the estate and hold that this practice is available in both Chapter 11 and Chapter 7 proceedings.
C. Application of Gibson Group Factors
After concluding that derivative standing survived Hartford Underwriters, the district court found that Hyundai satisfied the test for derivative standing under Gibson Group. This issue was not certified to this court, and the parties have not addressed it in their briefs on appeal. “[W]e recognize that even those issues not properly certified are subject to our discretionary power of review if otherwise necessary to the disposition of the case.” Easley v. Pettibone Mich. Corp., 990 F.2d 905, 912 (6th Cir.1993) (internal quotation marks omitted). Here, however, the record on appeal is inadequate. Under Gibson Group, a party seeking derivative standing must establish, inter alia, a “col-orable” claim that would benefit the estate. 66 F.3d at 1446. In determining whether a claim is colorable in this context, courts initially look to the “face of the complaint.” Id. at 1439. Looking to the complaint that Hyundai filed in its separate district court action, the district court in this case found that the complaint provided sufficient evidence of a colorable claim. That complaint, however, was not included in the Joint Appendix in this appeal. Accordingly, we will not guess at the complaint’s contents based on descriptions by the parties and the courts below. Because this issue was not certified to this court, the parties did not argue this issue on appeal, and the record before us is inadequate, we decline to review the district court’s ruling that Hyundai satisfied Gibson Group’s test for derivative standing.
D. Lift of Automatic Stay
Because we affirm the district court’s grant of derivative standing to Hyundai, we conclude that relief from the automatic stay is not necessary for the adequate protection of Hyundai’s interests. Hyundai requested that the bankruptcy court lift the automatic stay so that it could return to the district court to pursue its action against the JT & T parties to recover the assets allegedly fraudulently transferred from Trailer Source. A bankruptcy court must grant such a request “for cause, including the lack of adequate protection of an interest in property of such party in interest.” 11 U.S.C. § 362(d)(1).
Although Hyundai argues on appeal that we should affirm the district court’s order granting relief from the stay, Hyundai also appears to acknowledge that this would be unnecessary if it is granted derivative standing. Indeed, the bankruptcy court’s denial of derivative standing was the only reason that Hyundai later requested relief from the automatic stay. Hyundai states that:
For purposes of the derivative standing motion, Hyundai agreed to subordinate *246 its secured claim and receive a pro rata distribution from any recovery along with the allowed claims of other creditors in the case. The denial of derivative standing by the Bankruptcy Court formed the basis for Hyundai’s later request for relief from the automatic stay on February 17, 2006, to enforce its non-bankruptcy rights granted in the Settlement and Security Agreement.
Hyundai Br. at 10 n. 5. Hyundai sought to have the stay lifted so that it could bring fraudulent-transfer claims against the JT & T parties to recover assets allegedly transferred from Trailer Source. That is precisely what it will do now that it has been granted derivative standing, only it will do so indirectly, on behalf of the estate, rather than directly. Because Hyundai will now be able to pursue its fraudulent-transfer claims against the JT & T parties derivatively on behalf of the estate, relief from the stay is not necessary to provide “adequate protection” of Hyundai’s interests. Accordingly, we reverse the district court’s grant of stay relief.
III. CONCLUSION
For the reasons stated above, we AFFIRM the district court’s grant of derivative standing to Hyundai and REVERSE the district court’s grant of relief from the stay to Hyundai. The case is remanded for further proceedings consistent with this opinion.

. The description of the factual background that follows is drawn largely from the district court’s opinion, which is consistent with the parties' statements of facts in their briefs on appeal.

. Although the district court stated that appellant Mark Lazarus was also a shareholder in these companies, Hyundai alleges only that Lazarus played a role in the allegedly fraudulent transfers. Hyundai Br. at 6-7 n. 4.

. The dissent acknowledges that "[i]n most cases where appellate standing is at issue before a court of appeals, the question is whether the party who appealed the bank *237 ruptcy court's order to the district court was sufficiently aggrieved by that ruling.” Dissent at 25. Indeed, the dissent has pointed to no cases from this or any other circuit applying the appellate-standing doctrine when, as here, it is undisputed that the party who initially appealed the bankruptcy court's order had appellate standing.

. Because we conclude that the appellate-standing doctrine does not apply to this second layer of appeal, we find it unnecessary to address the dissent’s detailed arguments as to why, assuming that the doctrine does apply in this context, the JT & T parties lack appellate standing.

. In addition to § 544, §§ 545, 547, 548, and 549 authorize avoidance actions for the benefit of the estate-all with identical “the trustee may” language.

. Derivative standing was recognized in this circuit by 1915. In re Stearns Salt & Lumber Co., 225 F. 1 (6th Cir.1915).

. Bankruptcy judges are “units” of the district court. 28 U.S.C. § 151. "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.” 28 U.S.C. § 157(a) (emphasis added).