KENNEDY, Circuit Judge,
concurring in part and dissenting in part.
I concur in the judgment with respect to Babcock, Baske, Bricker, Evans, and Hen-ning. I would hold that Moran does have standing to appeal the Standing Order of the bankruptcy court, and for that reason, I respectfully dissent.
To be clear, I agree with the majority that an order that makes a party a defendant in a lawsuit cannot be appealed by that defendant whether it merely provides for the bare threat of litigation or whether it allows a lawsuit that has already been filed. I also agree that not all creditors necessarily have appellate standing to challenge an order of the bankruptcy court. I agree with the majority’s reliance on Judge Rogers’s dissent in Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc. (In re Trailer Source, Inc.), 555 F.3d 231 (6th Cir.2009). By reason of the fact that he has an administrative claim which entitles him to draw on the assets of the administratively insolvent estate — notwithstanding the fact that his administrative claim’s origin comes from the suit against him — however, I cannot agree that Moran, on the facts of this case, does not have standing to appeal the Standing Order of the bankruptcy court. Thus, I have no qualms with the majority’s discussion of a bare defendant’s lack of appellate standing, Maj. Op. at 453-55, but I disagree with its treatment of Moran’s appellate standing as an administrative creditor, Maj. Op. at 454-56
I.
Three critical factual distinctions must be drawn between this appeal and Trailer Source. In this appeal, LTV Steel, Co. (“LTV Steel”), is in administrative insolvency so that all remaining creditors are equivalent administrative creditors. In Trailer Source, Judge Rogers emphasized that JT & T had “not provided this court with any description of their claim or the assets out of which that claim could potentially be paid.” 555 F.3d at 250 (Rogers, J., dissenting). If JT & T had a subordinated claim “to those of all other creditors, it is very possible that the JT & T parties would not have recovered anything even in the absence of a grant of derivative standing to Hyundai.” Id. In other words, JT & T would not be harmed by the order authorizing suit against it because the assets from which JT & T would be paid were not those put at risk by the order authorizing suit. If JT & T had a “small, secured claim ... superior to all other claims,” then they would “recover on their claims regardless of whether the adversary action brought by Hyundai [was] successful.” Id. Put differently, JT & T would neither be harmed by the order authorizing suit against it, nor would its interest as a creditor be harmed if Hyundai lost its suit against JT & T again because, in both instances, JT & T would be paid out of assets not put at risk by an order authorizing suit nor a judgment against the estate. In this appeal, there are not different types of assets and claims because all creditors are equivalent administrative creditors and therefore, any drawing down of the assets of the estate effects Moran’s interests as an administrative creditor.
The second important factual distinction is that Hyundai, the plaintiff in the authorized suit, “could not recover any administrative expenses if it [were] not successful.” Id. at 251 (Rogers, J., dissenting). On the contrary, the derivative suit brought by the ACC against Moran and the other defendants will draw down on *458 the funds of the estate an estimated $3 million to $5 million. So while “a failed adversary proceeding would not drain the estate of assets and thereby indirectly affect the JT & T parties’ claims [as creditors]” in Trailer Source, id., that is not the case here. In this appeal, the bankruptcy court authorized the ACC, a committee of administrative creditors, to bring a derivative suit expending the funds of the administratively insolvent estate-most clearly understood as the administrative creditors’ own funds — to sue Moran and the assorted other defendants on behalf of all of the administrative creditors. The expended funds will not be recovered in the case of an adverse or inadequate judgment.
The last relevant factual distinction is that LTV Steel is obligated to indemnify Moran for his attorneys’ fees and certain judgments against him. His administrative claim is for such expenses. The consequence of this fact is that his “status as a defendant in a lawsuit,” Maj. Op. at 455, transforms into status as an administrative creditor because burdens imposed on Moran the defendant become burdens imposed on Moran the administrative creditor where indemnification makes any cost to Moran alone a cost to Moran from which he has a claim for reimbursement through the assets of the estate. To illustrate: the Standing Order makes it possible for the estate to recover punitive damages against Moran, but this merely implicates Moran’s status as a defendant in a lawsuit because Moran cannot claim indemnification from the estate for a punitive damages judgment. Otherwise, Moran’s status as an administrative creditor is implicated when he expends funds in his defense that he is entitled to have indemnified.
These three distinguishing aspects of this appeal lead me down a divergent path from that traveled by Judge Rogers in his dissent in Trailer Source. The three factual distinctions detailed above stand for, respectively, the propositions that: (1) a burden to the estate burdens all creditors; (2) litigation burdens the estate because that is from where the plaintiff in the authorized lawsuit will draw its funds; and (3) Moran’s interest in the Standing Order is largely as a creditor. Therefore, Moran has an interest in the Standing Order that the Bankruptcy Code respects. Indeed, the further upshot of these three factual distinctions is that Moran does have interests aligned with that of the estate and the other administrative creditors. In Trailer Source, “[t]he best outcome for the estate” was “the worst outcome for the JT & T parties,” and “the best outcome for the JT & T parties” was “the worst outcome for the estate.” 555 F.3d at 251-52 (Rogers, J., dissenting). Here, Moran shares much in common with the estate and his fellow administrative creditors. If the estate loses the subsequent suit, Moran could lose just as the other administrative creditors would lose. The estate is already in administrative insolvency. If the estate wins the subsequent suit but with a cost out of proportion with the benefit, Moran could lose just as the other administrative creditors would lose. True, Moran can avoid injury if he wins and the estate loses the authorized suit under certain circumstances. But Moran does not avoid injury only if he wins against the estate, nor does he incur injury if and only if he loses the authorized suit. Whether Moran suffers injury as a creditor turns on the ratio between his defense costs (proportional to the waste of the assets of the estate in advancing their claims) and the amount the estate recovers, not a win or a loss in the authorized suit. In fact, the challenged Standing Order presents exactly that question: whether suit against Moran *459 and the other defendants is cost effective.[1] That is why Moran is situated with his fellow administrative creditors to challenge the Standing Order in the bankruptcy court and on appeal.
II.
Two other points in the majority’s opinion require responses. First, the majority argues:
Moran’s status as an administrative claimant is solely dependant on the existence of the Standing Order that he now seeks to challenge. Were the Standing Order to be reversed, the lawsuit against him would be dismissed and his claim against the estate would disappear.
Maj. Op. at 455. At this point, it is important to stress that the Standing Order authorizes suit of Moran as well as a number of other defendants, such as Bricker. Suppose, for purposes of illustration, that the bankruptcy court authorized suit of each defendant using separate orders for each. The majority’s logic suggests that Moran would not have appellate standing to challenge the order authorizing suit against him, but he would have appellate standing to challenge the separate orders authorizing suit against the other defendants, because, even were those standing orders to be reversed, the lawsuit against him and his administrative claim against the estate would both remain. In other words, Moran would simply be an administrative claimant who had a say in how the estate used its assets to pursue a judgment against other defendants, because he may not agree that the potential awards were in satisfactory proportion with the expected funds to be expended. Surely, the majority does not mean to allow form to reign over substance by allowing, for instance, Moran to challenge the authorization of a lawsuit against Bricker only if the bankruptcy court authorized that suit as part of an order separate from that authorizing suit against Moran himself. Here, the bankruptcy court authorized suit against all defendants in one order, so to allow Moran standing to appeal the order authorizing suit against Bricker, we must grant him standing to appeal the order authorizing suit against himself.
As a general matter, the defendants in the authorized lawsuit that deserve indemnification are differently situated from each other and from the other administrative creditors in terms of the precise course of action that will maximize their respective recoveries (or eliminate the need for a recovery completely). This represents a problem with creditor derivative standing, Scott v. Nat’l Century Fin. Enters., Inc. (In re Baltimore Emergency Servs. II, Corp.), 432 F.3d 557, 562 (4th Cir.2005) (quoting Official, Unsecured Creditors’ Comm. v. Stern (In re SPM Mfg. Corp.), 984 F.2d 1305, 1317 (1st Cir.1993)) (“No two creditors have identical interests.”), that cannot be cured by — and in fact, is exacerbated by — excluding certain creditors with varying interests from appealing a bankruptcy court order that another group of creditors might favor when the Standing Order affects them all. Despite their differences, Moran and the other administrative creditors share a common interest in the cost-effectiveness of the proposed litigation so that they *460 should all be granted standing to challenge the Standing Order on appeal. Cf Maj. Op. at 455-56.
Second, the majority argues:
We decline to accept the perverse logic that Moran should be allowed to appeal the Standing Order while defendants without any indemnification — who would clearly be burdened to a greater extent than Moran because they would have to pay all defense costs and any awards against them from their own pockets— could not.
Maj. Op. at 455. But as the majority points out, bare injury does not suffice for person aggrieved status; on the contrary, the injured interest must be an injury “protected by the Bankruptcy Code.” Maj. Op. at 454 (citing Trailer Source, 555 F.3d at 247). Moran’s interest in indemnification through the assets of the estate implicates an interest protected by the Bankruptcy Code, namely Moran’s interest as a creditor. The defendant without indemnification-while he may shoulder a more weighty burden-does not shoulder a burden of an interest protected by the Bankruptcy Code. Moran’s logic is not “perverse,” because person aggrieved status has never been about who bears the greatest burden, it is about bearing a burden of an interest protected by the Bankruptcy Code.
III.
Preliminary to the discussion above is the question of whether Moran has an administrative claim at all. The ACC argues that Moran has a contingent, unliqui-dated administrative claim which we should not respect as an administrative claim for the purpose of person aggrieved appellate standing. First, nobody in the bankruptcy proceeding objected to Moran’s administrative claim. No one disputes that his claim is legitimate and it arises from a pre-existing interest in indemnification through the assets of the company as a former CEO of LTV Steel. Second, I cannot agree that the circumstances which would convert Moran’s administrative claim into an uncontingent, liquidated claim are too remote. True, a number of funds have been established to advance monies for Moran’s defense. But the Standing Order authorizes suit of Moran, Bricker, Henning Turner, Garrett, Baske, Babcock, Evans, Brown, and Does 1-100, many of whom have drawn and intend to draw on the trusts and insurance to fund their attorneys’ fees and any judgment against them. The $4 million trust has been and will be drawn upon by, in the least, Moran, Babcock, and Baske. This trust is only for defense costs. Moran has drawn and will draw upon the $1 million trust initially authorized to indemnify ten people. The estimated prosecution costs for the Administrative Claimants Committee is between $3-5 million. The total defense cost for multiple defendants, Moran, Babcock, and Baske, which also includes the costs of appeal here, will likely exceed the upper end of the $5 million estimate for the ACC standing alone— which would mean the exhaustion of the trusts and the ripening of Moran’s administrative claim.
IV.
For the forgoing reasons, I would grant appellate standing to Moran to challenge the Standing Order of the bankruptcy court. Respectfully, I dissent from the majority opinion as it pertains to Moran. Otherwise, I concur.

. Canadian Pacific Forest Prods. Ltd. v. J.D. Irving, Ltd. (In re Gibson Group), 66 F.3d 1436 (6th Cir.1995), requires that a bankruptcy court, in determining whether to grant creditor derivative standing, perform "cost-benefit analysis” as to whether litigation of certain claims "will likely benefit the estate.” Id. at 1442. Moran challenged the bankruptcy court’s Gibson Group analysis (or lack thereof) in the bankruptcy court, and seeks to challenge it again on appeal.