*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 09a0109p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

No. 06-4580
In re: LTV STEEL COMPANY, INC.,

*Debtor.*

_____

GLENN J. MORAN,

*Appellant,*


*v.*


LTV STEEL COMPANY, INC. and OFFICIAL
COMMITTEE OF ADMINISTRATIVE
CLAIMANTS,

*Appellees.*

Nos. 06-4580;
07-3530/3534/3537



No. 07-3530
WILLIAM JEFFREY BRICKER, Executor of the
Estate of William H. Bricker,

*Appellant,*


*v.*


OFFICIAL COMMITTEE OF ADMINISTRATIVE
CLAIMANTS,

*Appellee.*



Nos. 07-3534/3537
DENNIS BABCOCK, JAMES BASKE, ERIC
EVANS, and GEORGE HENNING,

*Appellants,*


*v.*


OFFICIAL COMMITTEE OF ADMINISTRATIVE
CLAIMANTS and UNITED STATES TRUSTEE,

*Appellees.*

1

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
Nos. 05-02285; 06-01082; 06-01081; 06-01503—
Christopher A. Boyko, District Judge.

Argued and Submitted:  January 15, 2009

Decided and Filed:  March 23, 2009

Before:  KENNEDY, COLE, and GILMAN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  Thomas S. Kilbane, SQUIRE, SANDERS & DEMPSEY, Cleveland, Ohio,
Gregory R. Farkas, FRANTZ WARD, Cleveland, Ohio, for Appellants.  Michael Andrew
VanNiel, BAKER & HOSTETLER, Cleveland, Ohio, Amy L. Good, OFFICE OF THE U.S.
TRUSTEE, Cleveland, Ohio, for Appellees.  **ON BRIEF:**  Thomas S. Kilbane, SQUIRE,
SANDERS & DEMPSEY, Cleveland, Ohio, Gregory R. Farkas, James B. Niehaus,
FRANTZ WARD, Cleveland, Ohio, Robert R. Kracht, McCARTHY, LEBIT, CRYSTAL
& LIFFMAN CO., Cleveland, Ohio, for Appellants.  Michael Andrew VanNiel, Matthew
Goldman, BAKER & HOSTETLER, Cleveland, Ohio, Amy L. Good, OFFICE OF THE
U.S. TRUSTEE, Cleveland, Ohio, P. Matthew Sutko, UNITED STATES DEPARTMENT
OF JUSTICE, Washington, D.C., for Appellees.

GILMAN, J., delivered the opinion of the court, in which COLE, J., joined.
KENNEDY, J. (pp. 12-18), delivered a separate opinion concurring in part and dissenting
in part.

_____

**OPINION**

_____

RONALD LEE GILMAN, Circuit Judge.  LTV Steel Company, Inc. filed for
Chapter 11 bankruptcy protection in 2000.  The United States Trustee for the Northern
District of Ohio appointed the Official Committee of Administrative Claimants (ACC) to
represent the interests of those creditors holding administrative claims.  A Standing Order
was entered by the bankruptcy court granting the ACC authority to bring a lawsuit against
certain officers and directors of LTV Steel, including the appellants in this case.  In response,
all of the appellants other than Moran filed a motion in the bankruptcy court seeking
dissolution of the ACC.  The bankruptcy court denied their motion.  Moran pursued a more
direct approach by appealing the Standing Order to the district court.  The district court ruled

against Moran. It also ruled against the other appellants who had appealed the denial of their motion to dissolve the ACC. Following the district court's dismissal of their respective appeals, the appellants now seek review in this court. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I.   BACKGROUND

When the LTV Steel bankruptcy estate became administratively insolvent, the United States Trustee appointed the ACC, which investigated the conduct of LTV Steel's officers and directors to determine whether there were any causes of action that should be pursued against them. The ACC concluded, among other things, that colorable claims existed against certain officers and directors for failing to halt the operations of LTV Steel sooner than they did. Because the estate declined to bring claims against the officers and directors, the ACC sought authority from the bankruptcy court to bring the lawsuits derivatively.

## A.   The Standing Order

In September 2005, the bankruptcy court issued a Standing Order authorizing the ACC to pursue litigation against various officers and directors of LTV Steel, including the six appellants in this case: Glenn J. Moran, William H. Bricker, Dennis Babcock, James Baske, Eric Evans, and George Henning. The Standing Order analyzed the ACC's proposed complaint and concluded that it contained colorable claims that, if successful, would benefit the estate. *In re LTV Steel Co., Inc.*, 333 B.R. 397 (Bankr. N.D. Ohio 2005); *see also Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd.* (In re *Gibson Group, Inc.*), 66 F.3d 1436, 1446 (6th Cir. 1995) (setting forth the requirements that a creditor must meet in order to file a derivative suit on behalf of a Chapter 11 bankruptcy estate). Less than two weeks after the issuance of the Standing Order, the ACC filed its lawsuit in the district court against the officers and directors.

Moran, a former CEO of LTV Steel, appealed the Standing Order to the district court. There, the ACC moved to dismiss Moran's appeal for lack of jurisdiction. The district court dismissed the appeal on two independent grounds—lack of finality and lack of standing. It first analyzed the appealability of the Standing Order under the finality rule of 28 U.S.C. § 158(a), which grants jurisdiction to the district courts "from final judgments,

orders and decrees" of the bankruptcy courts and, "with leave of the court, from other interlocutory orders and decrees." The district court concluded that the Standing Order was not an appealable final order because "no discrete dispute has been decided" and the Order "only authorizes the ACC to pursue claims on behalf of LTV." *Moran v. Official Comm. of Admin. Claimants*, No. 1:05CV2285, 2006 WL 3253128 at *2 (N.D. Ohio Nov. 8, 2006). Nor did the court accept Moran's alternative argument that the Standing Order fits within the narrow exception to the finality requirement for "collateral orders." *Id.* at *3; *see also Henry v. City of Detroit Manpower Dept.*, 763 F.2d 757, 760 (6th Cir. 1985) (noting that an order is considered "collateral," and thus final for appellate purposes, where it "conclusively determine[s] the disputed question, resolve[s] an important issue completely separate from the merits of the action, and [is] effectively unreviewable on appeal from a final judgment." (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978))).

Finally, the district court held that Moran lacked standing because he is not a "person aggrieved" by the Standing Order. *Moran*, 2006 WL 3253128 at *5 (concluding that a defendant is not a "person aggrieved" simply by virtue of being sued); *see also Marlow v. Rollins Cotton Co.* (In re *Julien Co.*), 146 F.3d 420, 423 (6th Cir. 1998) (describing the "person aggrieved" standing requirement in bankruptcy appeals). Moran now argues that the district court erred in not reaching the merits of his challenge to the Standing Order.

**B.     The motion to dissolve the ACC**

The remaining five appellants were among a group of defendants named in the ACC's lawsuit who filed a motion in February 2006 to dissolve the ACC, arguing that it was formed without statutory authority. Their motion was denied by the bankruptcy court in a ruling from the bench that was memorialized in a written order issued in May 2006. Bricker, Babcock, Baske, Evans, and Henning appealed the denial of their motion to the district court. That court refused to hear Bricker's appeal because it held that Bricker had appealed only the oral ruling of the bankruptcy court, and that the oral ruling was not an appealable final order. *Bricker v. Official Comm. of Admin. Claimants*, No. 1:06CV1082, 2007 WL 963290 at *4 (N.D. Ohio Mar. 28, 2007). In a separate opinion, the district court held that Babcock, Baske, Evans, and Henning were not "persons aggrieved" by the bankruptcy court's order, and that they therefore lacked standing to appeal. *Babcock v. Official Comm. of Admin.*

*Claimants*, No. 1:06CV1081, 1:06CV1503, 2007 WL 950336 at *2-4 (N.D. Ohio Mar. 27, 2007). These five appellants now assert that the district court erred when it declined to hear their appeals on the merits.

## II.    ANALYSIS

### A.    Standard of review

In cases heard originally in the district court, we will not set aside its factual findings unless they are clearly erroneous. *United States v. Green*, 532 F.3d 538, 552 (6th Cir. 2008). The rule in bankruptcy cases is similar, except that where the district court has reviewed factual findings initially made by the bankruptcy court, this court looks directly at the bankruptcy court's factual findings. *Investors Credit Corp. v. Batie* (In re *Batie*), 995 F.2d 85, 88 (6th Cir. 1993). All legal conclusions are reviewed de novo. *Id.* at 88-89.

This court has previously stated that "[w]hether an appellant is a person aggrieved is a question of fact . . . ." *Fid. Bank, Nat'l Ass'n v. M.M. Group, Inc.*, 77 F.3d 880, 882 (6th Cir. 1996). But the factors that comprise the "person aggrieved" doctrine are determined as a matter of law. *See Marlow*, 146 F.3d at 423 (describing the legal contours of the "person aggrieved" doctrine). "[I]f a question is a mixed question of law and fact, then we must break it down into its constituent parts and apply the appropriate standard of review for each part." *Batie*, 995 F.2d at 88. And to the extent that the facts are undisputed, the standing question is purely a legal one that we will review de novo. *See, e.g.*, *Kopp v. Clark* (In re *Kopexa Realty Venture Co.*), 240 B.R. 63, 65 (B.A.P. 10th Cir. 1999).

### B.    Moran's appeal of the Standing Order

We begin with Moran's argument that the district court erred in its determination that he lacks standing to appeal the bankruptcy court's Standing Order. Under the "person aggrieved" doctrine, a party does not have standing to appeal a bankruptcy court order unless that party is "directly and adversely affected pecuniarily by the order." *Marlow*, 146 F.3d at 423. Parties may not appeal a bankruptcy order unless they have a direct financial stake in the order such that it "diminishes [their] property, increases [their] burdens, or impairs [their] rights." *Fid. Bank*, 77 F.3d at 882. This standing requirement is "more limited than

Article III standing or the prudential requirements associated therewith." *Harker v. Troutman* (In re *Troutman Enter., Inc.*), 286 F.3d 359, 364 (6th Cir. 2002) (citing In re *PWS Holding Corp.*, 228 F.3d 224, 248 (3d Cir. 2000)).

We are not persuaded that Moran is a "person aggrieved" by the Standing Order. Although that order paved the way for the ACC to sue him, we are aware of no court that has held that the burden of defending a lawsuit, however onerous or unpleasant, is the sort of direct and immediate harm that makes a party "aggrieved" so as to confer standing in a bankruptcy appeal. *See Fid. Bank,* 77 F.3d at 883 (being "subject[ed] to the possibility of future litigation" by a bankruptcy court order is "insufficient to confer standing"); *see also Travelers Ins. Co. v. H.K. Porter Co., Inc.*, 45 F.3d 737, 743 (3d Cir. 1995) ("[A]n order which simply allows a lawsuit to go forward does not necessarily "aggrieve" the potential defendant for purposes of appellate standing.");  In re *El San Juan Hotel*, 809 F.2d 151, 155 (1st Cir. 1987) (holding that an appellant "whose only interest is as a party defendant . . . has no standing" because the order in question "has no direct and immediate impact on appellant's pecuniary interests." (citation and internal quotation marks omitted)); *Travelers Cas. & Sur. v. Corbin* (In re *First Cincinnati, Inc.*), 286 B.R. 49, 53 (B.A.P. 6th Cir. 2002) ("[M]ost, if not all, of the courts that have considered this question have held that a bankruptcy court's order does not produce the direct and adverse pecuniary impact necessary to bestow standing on an appellant if the order's effect on the appellant is merely to expose it to the risks of litigation.").

This key point is clarified by the dissenting opinion in *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc.* (In re *Trailer Source, Inc.*), 555 F.3d 231 (6th Cir. 2009), where Hyundai sought to sue several creditors of the Trailer Source estate (the JT & T parties) to recover alleged fraudulent transfers of estate assets. *Id.* at 233-34.  The bankruptcy court analyzed the *Gibson Group* factors and denied Hyundai's request, but Hyundai appealed and the district court reversed. *Id.* at 234-35.  In response, the JT & T parties—adversary defendants in the newly authorized lawsuit by Hyundai—appealed to this court. *Id.* at 235.  Hyundai argued on appeal that the JT & T parties did not have standing under the "person aggrieved" doctrine to challenge the district court's grant to Hyundai of the right to bring suit. *Id.*  The majority held that "the bankruptcy appellate-standing

doctrine is not applicable to the second layer of appeal, from the district court to the court of appeals, when it is uncontested that the party who appealed the bankruptcy court's order to the district court had appellate standing." *Id.* at 237.

Judge Rogers dissented on this point, opining that the rationale behind the "person aggrieved" doctrine—"prevent[ing] indirectly affected parties from stalling bankruptcy proceedings"—is "implicated in the context of an appeal from a district court to a court of appeals as much as in an appeal from a bankruptcy court to a district court." *Id.* at 247 (Rogers, J., dissenting). He accordingly proceeded to analyze whether the JT & T parties were "persons aggrieved" "in their capacity as defendants to future litigation" and concluded that they were not. *Id.*

Because the ACC's right to sue the defendants in the present case was granted by the bankruptcy court in the first instance, the *Trailer Source* majority's holding regarding the inapplicability of the "person aggrieved" doctrine to the "second layer of appeal" is not relevant here. This caused the majority to state that it had no need to address Judge Rogers's "detailed arguments as to why . . . the JT & T parties lack[ed] appellate standing," *id.* at 238 n.4 (majority opinion), but we find his thoughtful analysis of the standing issue persuasive in regard to the case before us.

We agree with Judge Rogers's observation that "parties are not aggrieved by an order granting a creditor derivative standing when their interest in the order is as party defendants in the resulting adversary proceeding . . . because the interest that [such parties] assert as defendants to an adversary proceeding is not protected by the Bankruptcy Code." *Id.* at 247 (Rogers, J., dissenting) (citations omitted). Moran, like the JT & T parties in *Trailer Source*, is interested in "avoiding liability to the estate." *Id.* at 248. This interest "is diametrically opposed to the primary goal of . . . the Bankruptcy Code in general, which 'is to minimize the injury to creditors.'" *Id.* (citing In re *Harwald Co.*, 497 F.2d 443, 444 (7th Cir. 1974)).

Moran argues in the alternative that even if one could reasonably conclude that the bare threat of litigation is insufficient to confer standing, the fact that here a lawsuit has already been filed should be enough to give him "person aggrieved" standing. He contends

that any lawsuit against the appellants in *Fidelity Bank, Nat'l Ass'n v. M.M. Group, Inc.*, 77 F.3d 880 (6th Cir. 1996), was "remote and consequential rather than direct and immediate." *Id.* at 883. We find this to be a distinction without a difference. Central to *Fidelity Bank*'s reasoning was the observation that the order at issue "d[id] not impair appellants' ability to defend themselves in future suits. Those defenses that would have been available to them . . . will still be available in future suits." *Id.* We do not believe that the actual filing of the lawsuit, as opposed to the bare threat of one, alters the applicability of this rationale. Therefore, as in the case of the JT & T adversary defendants, "it is irrelevant that it is no longer uncertain whether" Moran "will be sued by the estate." *Trailer Source*, 555 F.3d at 248 (Rogers, J., dissenting). The Standing Order's authorization of a suit against Moran did not directly "diminish [his] property, increase [his] burdens, or detrimentally affect [his] rights," and he therefore does not have standing to appeal the order. *See, e.g.*, *San Juan Hotel*, 809 F.2d at 155 (citing In re *Fondiller*, 707 F.2d 441, 443 (9th Cir. 1983)).

Moran next argues that his status as an administrative claimant makes him a "person aggrieved" by the Standing Order. But Moran's only claim on estate funds results from the fact that, pursuant to a bylaws indemnity provision, his expenses in defending against the ACC's lawsuit are being paid by the estate. He insists that this administrative claim creates in him an interest equal to that of the other creditors—the members of the ACC—in seeing that the estate's assets are distributed appropriately and without waste. *See Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988) ("As a general rule, creditors have standing to appeal orders of the bankruptcy court disposing of property of the estate because such orders directly affect the creditors' ability to receive payment of their claims."). But simply holding a claim of any type against the estate does not automatically confer appellate standing under the "person aggrieved" doctrine. *Trailer Source*, 555 F.3d at 250 (Rogers, J., dissenting) (collecting cases that make this point). Rather, "[t]o have standing to appeal," Moran "must demonstrate he has a direct and adverse pecuniary interest in each order he challenges." *Lopez v. Behles* (*In re Am. Ready Mix, Inc.*), 14 F.3d 1497, 1500 (10th Cir. 1994).

The argument that Moran "ha[s] an interest in ensuring the maximization of estate assets is clearly disingenuous as asserted here." *See Trailer Source*, 555 F.3d at 251-52

(Rogers, J., dissenting) ("It is obvious from the adverse interests of the [named defendants] and the estate that [the named defendants] are not appealing as creditors of the estate, but as defendants to an adversary proceeding brought for the estate."). Moran's status as an administrative claimant is solely dependant on the existence of the Standing Order that he now seeks to challenge. Were the Standing Order to be reversed, the lawsuit against him would be dismissed and his claim against the estate would disappear.

The only burden that Moran bears under the Standing Order—the possibility that he may not receive a full recovery of his administrative claim for litigation expenses—flows directly from his status as a defendant. This is nothing more than an indirect way of arguing that his status as a defendant in a lawsuit is sufficient to confer "person aggrieved" standing. But as we have explained, being sued is not sufficient to make him a "person aggrieved" for bankruptcy purposes. *See Fid. Bank,* 77 F.3d at 883. No case to our knowledge has held that an administrative claim of this nature gives a litigant such as Moran the standing to appeal.

The rationale for this result becomes even clearer upon consideration of the plight of a hypothetical group of defendants similarly situated to Moran in all but one respect—the absence of any indemnification for defense costs and damage awards against them. Such defendants would not be considered "persons aggrieved" by a bankruptcy court order allowing them to be sued. *See, e.g.*, *id.* We decline to accept the perverse logic that Moran should be allowed to appeal the Standing Order while defendants without any indemnification—who would clearly be burdened to a greater extent than Moran because they would have to pay all defense costs and any awards against them from their own pockets—could not.

Moran's final argument is that if he does not have standing to appeal the Standing Order, then there is no one left to challenge the soundness of the bankruptcy court's decision. He focuses on the fact that, in order to authorize the ACC to derivatively pursue the estate's claims against him, the bankruptcy court was required to weigh the costs of pursuing the case against the potential benefits to the estate if the ACC succeeds. *See Canadian Pac. Forest Prods. Ltd. v. J.D. Irving, Ltd.* (In re *Gibson Group, Inc.*), 66 F.3d 1436, 1446 (6th Cir. 1995). According to Moran, the bankruptcy court failed to consider all of the relevant

evidence in its costs-versus-benefits analysis, and ultimately reached the wrong conclusion after only perfunctory consideration. If Moran is correct and the bankruptcy court erred in this part of its analysis, the ACC's lawsuit against him and the other officers and directors would not serve the best interests of the estate.

Moran is mistaken, however, in arguing that only he can challenge the Standing Order on appeal. If the bankruptcy court's *Gibson Group* analysis was faulty, the appropriate parties to seek review of that analysis are those creditors of LTV Steel whose recoveries would be diminished should the ACC's lawsuit fail, ultimately decreasing the estate's value. Moran, whose only claim against the estate results from his status as a defendant in the lawsuit authorized by the Standing Order, is not among this group. The other creditors' interests align with those of the estate, because the size of their recovery depends on the potential value of the ACC's lawsuit. But all of the remaining creditors in this case are part of the ACC and have chosen to vigorously pursue the lawsuit against the officers and directors. Presumably they would not have done so if they did not believe that their actions will increase the net value of the estate. In a case where the creditors disagree about the prudence of pursuing a particular claim, those among them who object to the bankruptcy court's *Gibson Group* analysis would have standing to appeal the resulting order. Because no creditor in this case has objected to the Standing Order, however, that issue is not before us here.

**C.      Appeal from denial of the motion to dissolve the ACC**

We now turn to the arguments of the remaining appellants, all of whom appeal the denial of their motion to dissolve the ACC. The district court disposed of Bricker's appeal based on a perceived technical problem and declared that the remaining appellants did not have standing to appeal from the denial of their motion.

**1.      *Babcock, Baske, Evans, and Henning***

These appellants argue that the district court erred in dismissing their appeal for lack of standing. For the same reasons set forth above in relation to Moran's appeal of the Standing Order, however, they are not "persons aggrieved" and do not have standing to appeal the order dismissing their motion to dissolve the ACC. This result is even more

obvious here than in Moran's case because, even if these appellants' status as defendants in the ACC's lawsuit were sufficient to confer standing upon them, that status did not flow "directly" from the order denying their motion to dissolve the ACC. *See Marlow*, 146 F.3d at 423. Their status as defendants instead resulted from the Standing Order that authorized the lawsuit, an order that they did not appeal.

### 2. *Bricker*

This leaves us with the separate appeal by Bricker. According to the district court, Bricker's appeal was premature because he filed his notice after the date of the bankruptcy court's oral ruling but before the corresponding written order was entered. Bricker now asserts that his notice of appeal was saved by the operation of Rule 8002(a) of the Federal Rules of Bankruptcy Procedure, which states that "[a] notice of appeal filed after the announcement of a decision or order but before entry of the judgment, order, or decree shall be treated as filed after such entry and on the day thereof." We note that even the United States Trustee concedes that Rule 8002(a) controls and that Bricker's appeal to the district court was therefore timely filed. Both the Trustee and the ACC, however, argue that Bricker's appeal should suffer the same fate as that of the other appellants because, like them, he is not a "person aggrieved" and does not have standing to pursue the appeal.

The district court did not consider whether Bricker is a "person aggrieved." Despite that, we may appropriately consider this issue because all of the relevant facts and evidence are before us. *See Fid. Bank*, 77 F.3d at 882 (considering whether appellants were "persons aggrieved" on the basis of the record on appeal). Because Bricker's situation is identical to that of the Babcock group of appellants, he lacks standing to appeal the district court's order for the same reasons articulated above relating to both that group of appellants and to Moran. We therefore affirm the district court's dismissal of Bricker's appeal.

### III.   CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

_____

**CONCURRING IN PART AND DISSENTING IN PART**
_____

KENNEDY, Circuit Judge, concurring in part and dissenting in part. I concur in the judgment with respect to Babcock, Baske, Bricker, Evans, and Henning. I would hold that Moran does have standing to appeal the Standing Order of the bankruptcy court, and for that reason, I respectfully dissent.

To be clear, I agree with the majority that an order that makes a party a defendant in a lawsuit cannot be appealed by that defendant whether it merely provides for the bare threat of litigation or whether it allows a lawsuit that has already been filed. I also agree that not all creditors necessarily have appellate standing to challenge an order of the bankruptcy court. I agree with the majority's reliance on Judge Rogers's dissent in *Hyundai Translead, Inc. v. Jackson Truck & Trailer Repair, Inc.* (In re *Trailer Source, Inc.*), 555 F.3d 231 (6th Cir. 2009). By reason of the fact that he has an administrative claim which entitles him to draw on the assets of the administratively insolvent estate–notwithstanding the fact that his administrative claim's origin comes from the suit against him–however, I cannot agree that Moran, on the facts of this case, does not have standing to appeal the Standing Order of the bankruptcy court. Thus, I have no qualms with the majority's discussion of a bare defendant's lack of appellate standing, Maj. Op. at 6–8, but I disagree with its treatment of Moran's appellate standing as an administrative creditor, Maj. Op. at 8–10.

I.

Three critical factual distinctions must be drawn between this appeal and *Trailer Source*. In this appeal, LTV Steel, Co. ("LTV Steel"), is in administrative insolvency so that all remaining creditors are equivalent administrative creditors. In *Trailer Source*, Judge Rogers emphasized that JT&T had "not provided this court with any description of their claim or the assets out of which that claim could potentially be paid." 555 F.3d at 250 (Rogers, J., dissenting). If JT&T had a subordinated claim "to those of all other creditors, it is very possible that the JT&T parties would not have recovered anything even in the absence of a grant of derivative standing to Hyundai." *Id.* In other words, JT&T would not

be harmed by the order authorizing suit against it because the assets from which JT&T would be paid were not those put at risk by the order authorizing suit. If JT&T had a "small, secured claim . . . superior to all other claims," then they would "recover on their claims regardless of whether the adversary action brought by Hyundai [was] successful." *Id.* Put differently, JT&T would neither be harmed by the order authorizing suit against it, nor would its interest as a creditor be harmed if Hyundai lost its suit against JT&T again because, in both instances, JT&T would be paid out of assets not put at risk by an order authorizing suit nor a judgment against the estate. In this appeal, there are not different types of assets and claims because all creditors are equivalent administrative creditors and therefore, any drawing down of the assets of the estate effects Moran's interests as an administrative creditor.

The second important factual distinction is that Hyundai, the plaintiff in the authorized suit, "could not recover any administrative expenses if it [were] not successful." *Id.* at 251 (Rogers, J., dissenting). On the contrary, the derivative suit brought by the ACC against Moran and the other defendants will draw down on the funds of the estate an estimated $3 million to $5 million. So while "a failed adversary proceeding would not drain the estate of assets and thereby indirectly affect the JT&T parties' claims [as creditors]" in *Trailer Source*, *id.*, that is not the case here. In this appeal, the bankruptcy court authorized the ACC, a committee of administrative creditors, to bring a derivative suit expending the funds of the administratively insolvent estate–most clearly understood as the administrative creditors' own funds–to sue Moran and the assorted other defendants on behalf of all of the administrative creditors. The expended funds will not be recovered in the case of an adverse or inadequate judgment.

The last relevant factual distinction is that LTV Steel is obligated to indemnify Moran for his attorneys' fees and certain judgments against him. His administrative claim is for such expenses. The consequence of this fact is that his "status as a defendant in a lawsuit," Maj. Op. at 9, transforms into status as an administrative creditor because burdens imposed on Moran the defendant become burdens imposed on Moran the administrative creditor where indemnification makes any cost to Moran alone a cost to Moran from which he has a claim for reimbursement through the assets of the estate. To illustrate: the Standing

Order makes it possible for the estate to recover punitive damages against Moran, but this merely implicates Moran's status as a defendant in a lawsuit because Moran cannot claim indemnification from the estate for a punitive damages judgment. Otherwise, Moran's status as an administrative creditor is implicated when he expends funds in his defense that he is entitled to have indemnified.

These three distinguishing aspects of this appeal lead me down a divergent path from that traveled by Judge Rogers in his dissent in *Trailer Source*. The three factual distinctions detailed above stand for, respectively, the propositions that: (1) a burden to the estate burdens all creditors; (2) litigation burdens the estate because that is from where the plaintiff in the authorized lawsuit will draw its funds; and (3) Moran's interest in the Standing Order is largely as a creditor. Therefore, Moran has an interest in the Standing Order that the Bankruptcy Code respects. Indeed, the further upshot of these three factual distinctions is that Moran does have interests aligned with that of the estate and the other administrative creditors. In *Trailer Source*, "[t]he best outcome for the estate" was "the worst outcome for the JT&T parties," and "the best outcome for the JT&T parties" was "the worst outcome for the estate." 555 F.3d at 251-52 (Rogers, J., dissenting). Here, Moran shares much in common with the estate and his fellow administrative creditors. If the estate loses the subsequent suit, Moran could lose just as the other administrative creditors would lose. The estate is already in administrative insolvency. If the estate wins the subsequent suit but with a cost out of proportion with the benefit, Moran could lose just as the other administrative creditors would lose. True, Moran can avoid injury if he wins and the estate loses the authorized suit under certain circumstances. But Moran does not avoid injury *only if* he wins against the estate, nor does he incur injury *if and only if* he loses the authorized suit. Whether Moran suffers injury as a creditor turns on the ratio between his defense costs (proportional to the waste of the assets of the estate in advancing their claims) and the amount the estate recovers, not a win or a loss in the authorized suit. In fact, the challenged Standing Order presents exactly that question: whether suit against Moran and the other

defendants is cost effective.[1] That is why Moran is situated with his fellow administrative creditors to challenge the Standing Order in the bankruptcy court and on appeal.

## II.

Two other points in the majority's opinion require responses. First, the majority argues:

> Moran's status as an administrative claimant is solely dependant on the existence of the Standing Order that he now seeks to challenge. Were the Standing Order to be reversed, the lawsuit against him would be dismissed and his claim against the estate would disappear.

Maj. Op. at 9. At this point, it is important to stress that the Standing Order authorizes suit of Moran as well as a number of other defendants, such as Bricker. Suppose, for purposes of illustration, that the bankruptcy court authorized suit of each defendant using separate orders for each. The majority's logic suggests that Moran would not have appellate standing to challenge the order authorizing suit against him, but he would have appellate standing to challenge the separate orders authorizing suit against the other defendants, because, even were those standing orders to be reversed, the lawsuit against him and his administrative claim against the estate would both remain. In other words, Moran would simply be an administrative claimant who had a say in how the estate used its assets to pursue a judgment against other defendants, because he may not agree that the potential awards were in satisfactory proportion with the expected funds to be expended. Surely, the majority does not mean to allow form to reign over substance by allowing, for instance, Moran to challenge the authorization of a lawsuit against Bricker only if the bankruptcy court authorized that suit as part of an order separate from that authorizing suit against Moran himself. Here, the bankruptcy court authorized suit against all defendants in one order, so to allow Moran standing to appeal the order

---

[1]*Canadian Pacific Forest Prods. Ltd. v. J.D. Irving, Ltd.* (In re *Gibson Group*), 66 F.3d 1436 (6th Cir. 1995), requires that a bankruptcy court, in determining whether to grant creditor derivative standing, perform "cost-benefit analysis" as to whether litigation of certain claims "will likely benefit the estate." *Id.* at 1442. Moran challenged the bankruptcy court's *Gibson Group* analysis (or lack thereof) in the bankruptcy court, and seeks to challenge it again on appeal.

authorizing suit against Bricker, we must grant him standing to appeal the order authorizing suit against himself.

As a general matter, the defendants in the authorized lawsuit that deserve indemnification are differently situated from each other and from the other administrative creditors in terms of the precise course of action that will maximize their respective recoveries (or eliminate the need for a recovery completely). This represents a problem with creditor derivative standing, *Scott v. Nat'l Century Fin. Enters., Inc.* (In re *Baltimore Emergency Servs. II, Corp.*), 432 F.3d 557, 562 (4th Cir. 2005) (quoting *Official, Unsecured Creditors' Comm. v. Stern* (In re *SPM Mfg. Corp.*), 984 F.2d 1305, 1317 (1st Cir. 1993)) ("No two creditors have identical interests."), that cannot be cured by–and in fact, is exacerbated by–excluding certain creditors with varying interests from appealing a bankruptcy court order that another group of creditors might favor when the Standing Order affects them all. Despite their differences, Moran and the other administrative creditors share a common interest in the cost-effectiveness of the proposed litigation so that they should all be granted standing to challenge the Standing Order on appeal. *Cf.* Maj. Op. at 10.

Second, the majority argues:

> We decline to accept the perverse logic that Moran should be allowed to appeal the Standing Order while defendants without any indemnification—who would clearly be burdened to a greater extent than Moran because they would have to pay all defense costs and any awards against them from their own pockets—could not.

Maj. Op. at 9–10. But as the majority points out, bare injury does not suffice for person aggrieved status; on the contrary, the injured interest must be an injury "protected by the Bankruptcy Code." Maj. Op. at 8 (citing *Trailer Source*, 555 F.3d at 247). Moran's interest in indemnification through the assets of the estate implicates an interest protected by the Bankruptcy Code, namely Moran's interest as a creditor. The defendant without indemnification–while he may shoulder a more weighty burden–does not shoulder a burden of an interest protected by the Bankruptcy Code. Moran's logic is not

"perverse," because person aggrieved status has never been about who bears the greatest burden, it is about bearing a burden of an interest protected by the Bankruptcy Code.

### III.

Preliminary to the discussion above is the question of whether Moran has an administrative claim at all. The ACC argues that Moran has a contingent, unliquidated administrative claim which we should not respect as an administrative claim for the purpose of person aggrieved appellate standing. First, nobody in the bankruptcy proceeding objected to Moran's administrative claim. No one disputes that his claim is legitimate and it arises from a pre-existing interest in indemnification through the assets of the company as a former CEO of LTV Steel. Second, I cannot agree that the circumstances which would convert Moran's administrative claim into an uncontingent, liquidated claim are too remote. True, a number of funds have been established to advance monies for Moran's defense. But the Standing Order authorizes suit of Moran, Bricker, Henning Turner, Garrett, Baske, Babcock, Evans, Brown, and Does 1-100, many of whom have drawn and intend to draw on the trusts and insurance to fund their attorneys' fees and any judgment against them. The $4 million trust has been and will be drawn upon by, in the least, Moran, Babcock, and Baske. This trust is only for defense costs. Moran has drawn and will draw upon the $1 million trust initially authorized to indemnify ten people. The estimated prosecution costs for the Administrative Claimants Committee is between $3-5 million. The total defense cost for multiple defendants, Moran, Babcock, and Baske, which also includes the costs of appeal here, will likely exceed the upper end of the $5 million estimate for the ACC standing alone–which would mean the exhaustion of the trusts and the ripening of Moran's administrative claim.

IV.

For the forgoing reasons, I would grant appellate standing to Moran to challenge the Standing Order of the bankruptcy court. Respectfully, I dissent from the majority opinion as it pertains to Moran. Otherwise, I concur.